IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANITA A. GAYDOSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-220-E |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 26th day of August, 2020, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to discuss two state agency physicians' medical opinions in his analysis; and (2) failing to give adequate weight to the medical opinion provided by Plaintiff's treating physician in formulating

his residual functional capacity assessment ("RFC").  The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, the Court notes that one of the state agency opinions that Plaintiff claims was wrongfully overlooked was authored by Wayne Johnston, who is not identified as a physician as Plaintiff alleges, but is actually identified as a single decision maker, or "SDM."  (R. 81).  As "[t]he opinions of SDMs are generally not afforded any evidentiary weight," the ALJ did not err in failing to discuss that opinion in his analysis.  Caville v. Berryhill, No. 18-1657, 2019 WL 4278832, at *4 n.2 (W.D. Pa. Sept. 10, 2019).

Additionally, the Court finds that, while the ALJ did not specifically address the opinion of state agency psychologist Monica Yeater, Psy.D., the RFC that the ALJ formulated, as well as the jobs provided by the vocational expert ("VE"), discussed infra, are consistent with the limitations contained in Dr. Yeater's opinion.  In his decision, the ALJ concluded that Plaintiff retains the RFC "to perform light work as defined in 20 CFR 404.1567(b) except [she] is limited to simple tasks with no tolerance for production rate or pace work; and is limited to occasional interaction with supervisors."  (R. 19).  When the ALJ asked the VE, at the administrative hearing, whether there are jobs in the national economy that an individual with such limitations could perform, the VE responded that there would be such jobs, which would be unskilled in nature.  (R. 70).  The VE then gave three examples of such unskilled jobs that Plaintiff could perform, including routing clerk, cashier and marker.  (R. 23, 70).

In conducting a mental residual functional capacity assessment at the initial level, Dr. Yeater opined that, while Plaintiff has moderate limitations in certain areas regarding sustained concentration and persistence, she "is capable of working within a work schedule and at a consistent pace," that she "can make simple decisions," and that she "is able to carry out very short and simple instructions."  (R. 82).  Dr. Yeater also found that, while Plaintiff has moderate adaptation limitations, she "can sustain an ordinary routine without special supervision."  (R. 83).  Dr. Yeater concluded that Plaintiff "is capable of completing simple, routine tasks in a stable work environment" and "can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks."  (R. 83).  She further concluded that Plaintiff "is able to meet the basic mental demands of unskilled work despite the limitations resulting from her impairment."  (R. 83).

Although Plaintiff contends that the "opinion[] provided by Dr. Yeater . . . exceed[s] that of the ALJ's [RFC]," and that declining to discuss that opinion warrants remand, the Court does not agree. (Doc. No. 10, at 9).  For example, Plaintiff argues that the RFC does not specifically limit Plaintiff to unskilled work.  However, the Court finds that such a limitation is not required since, upon questioning by the ALJ at the administrative hearing as to whether jobs existed that Plaintiff could perform with the RFC that he had formulated, the VE explained that an individual with such RFC could perform unskilled jobs, and she provided three specific unskilled jobs as examples.  (R. 70).  Plaintiff also asserts that the ALJ erred in not discussing, or including in his RFC, Dr. Yeater's opinion that Plaintiff could not engage in work tasks that involved anything greater than one or two steps.  The Court notes, however, that Dr. Yeater's full explanation of

2

that limitation indicates that Plaintiff "can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks."  (R. 83).  In fact, the ALJ specifically limited Plaintiff to "simple tasks" in his RFC, and the ability to understand, remember and carry out simple job instructions is part of the very definition of unskilled work that included jobs that Plaintiff was adjudged able to perform.  See Program Operations Manual System (POMS) 25020.010.  Finally, Plaintiff states that Dr. Yeater opined that she could only make simple decisions, and that such limitation was also not discussed or included in the RFC.  Nevertheless, the Court notes that a limitation to simple decision making is also part of the definition of unskilled work, and thus was included as a factor when considering jobs that Plaintiff is able to perform.  See id.

Thus, the Court concludes that Dr. Yeater's opinion is not in conflict—and is actually supportive of—the ALJ's RFC and the unskilled jobs provided by the VE.  Even if the ALJ had expressly discussed in his decision each of Dr. Yeater's individual findings, and if he had included in his RFC the specific language from her assessment that Plaintiff cites, the VE's response to the ALJ's hypothetical question, and the ALJ's conclusion, would have been the same.  Any error is therefore harmless since remand would not change the ALJ's decision.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

Second, the Court finds no merit in Plaintiff's contention that the ALJ erred in deciding not to give controlling weight to the opinion evidence provided by treating physician Baron Denniston, M.D.  It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).  "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."  Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011).  A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)).  "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record."  Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007).  A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner."  Smith v. Comm'r of Soc. Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

Here, psychiatrist Dr. Denniston opined in a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" that Plaintiff has moderate limitations in her ability to make judgments on simple work-related decisions and extreme limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  (R. 504).  Dr. Denniston identified the factors that support his assessment as that Plaintiff "has trouble remembering important tasks, forgetful, easily fatigued, prioritizing."  (R. 504).  Dr. Denniston also opined that Plaintiff has mild limitations in interacting appropriately with the public, moderate limitations in interacting appropriately with

supervisors, and marked limitations in interacting appropriately with co-workers. (R. 505). At the end of his statement, Dr. Denniston listed the factors supporting his assessment as depression and back pain. (R. 505).

The Court emphasizes, first, that the opinion at issue was provided on a short, simple check-box form which consists mainly of questions with options for the doctor to check and blanks to fill. (R. 504-06). The Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Further, the Third Circuit has affirmed that an ALJ may discount a treating physician's opinion where it consists of a conclusory check-box form. See, e.g., Colvin v. Comm'r of Soc. Sec., 675 Fed. Appx. 154, 156-57 (3d Cir. 2017) (noting that a treating physician's opinion that was set forth in a check-box form was weak evidence at best). Accordingly, the Court finds that Dr. Denniston's opinion, on its own, lacks support or details to justify the statements made therein.

Nevertheless, Plaintiff contends that the ALJ: (1) failed to explain initially why he was declining to give Dr. Denniston's opinion controlling weight, and (2) then failed to provide good reasons supported by substantial evidence for discrediting the doctor's opinion and giving it less weight than it deserved. The Court disagrees. The ALJ clearly explained that he was giving Dr. Denniston's opinion only "some weight" (rather than controlling weight) because "it is not fully supported by [his] treatment notes that document stable mental status exams in spite of [Plaintiff's] self-reported depression." (R. 21). The ALJ reviewed Plaintiff's treatment notes from Dr. Denniston and noted that, after Plaintiff began new medication, she reported feeling better and Dr. Denniston himself reported her having a less depressed mood and normal affect. (R. 21). However, Dr. Denniston continued to keep Plaintiff out of work, opining that he was concerned that she would decompensate if she were to return to work "given various health issues and stressors." (R. 21). The ALJ explained that he gave such opinions little weight because they are not well supported by treatment notes that document only mild changes in mood and affect during this period, and he noted that Plaintiff required no intensive mental health treatment and that she improved after her medication change. (R. 21). The ALJ concluded that Dr. Denniston's opinions about needing to stay out of work "were largely based on [Plaintiff's] subjective symptom complaint, and not objective and supportable medical evidence." (R. 21). Such reasoning by the ALJ clearly and thoroughly explains why he found Dr. Denniston's opinion to be inconsistent with the other evidence of record, and thus not entitled to controlling weight. See 20 C.F.R. 404.1527(c)(2).

Plaintiff further argues that the ALJ did not properly explain why he was giving Dr. Denniston's opinion only "some weight." However, the ALJ clearly explained in his decision that that opinion was "not fully supported by Dr. Denniston's treatment notes that document stable mental status exams in spite of [Plaintiff's] self-reported depression." (R. 21). Upon review of those treatment notes, the Court finds the ALJ's conclusion to be reasonable since the records show that Plaintiff's medication improved her mood, that she remained out of work despite feeling "not too bad," and that she required no more intensive treatment. (R. 410-16, 511-38). Finally, Plaintiff objects to the fact that the ALJ explained that Dr. Denniston lists Plaintiff's "back pain as a reason she is not able to work, when he does not treat her back pain

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/Alan N. Bloch<br>United States District Judge

ecf:     Counsel of record

---

and is not qualified to make statements on how [her] back pain affects her ability to work." (R. 21). The Court notes that such analysis is entirely appropriate under the regulations that state that consideration of the nature and extent of the treatment relationship will be considered when determining the weight assigned to a medical opinion. See 20 C.F.R. § 404.1527(c)(2)(ii).

Thus, the Court finds that the ALJ sufficiently explained his reasons for giving Dr. Denniston's opinion less than controlling weight in his analysis. Additionally, the Court finds that the ALJ did not fail to provide sufficient reasons for discounting Dr. Denniston's opinion and giving it only "some weight" in formulating the RFC. Rather, the ALJ fulfilled his duty as factfinder to evaluate Dr. Denniston's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. § 404.1527.

In sum, after careful review of the record, the Court finds that remand is not required due to the ALJ's failure to discuss the opinions of state agency physicians. Additionally, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Denniston's opinion and his decision as to the weight given to that opinion in making his ultimate determination regarding Plaintiff's RFC. Accordingly, the Court affirms.